**PRIGMORE v. HARDWARE MUT. INS. CO. OF MINNESOTA.**

No. 5981.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 7, 1949.

Rehearing Denied Dec. 12, 1949.

Andress & Ramsey, Dallas, for appellant.

Bonney, Paxton & Wade, Dallas, for appellee.

898

PITTS, Chief Justice.

Appellee, Hardware Mutual Insurance Company of Minnesota, a corporation, filed suit against appellant, N. C. Prigmore, for the collection of $1732.50 as the balance due on a promissory note, the original sum of which was $2500. Appellant answered under oath that there was no consideration for the execution of the note and that the same was executed by him under duress. He further pleaded that he had made 37 monthly payments of $25 each on the note aggregating $925, for which sum he sought in a cross action to recover from appellee with interest thereon.

There was little controversy about the facts in the case. However there was one disputed fact issue submitted to a jury empaneled in the case and it found in response to the one question propounded to it that the execution of the note by appellant was induced and procured by threats of criminal prosecution made by appellee's agent. Notwithstanding such finding by the jury, the trial court sustained appellee's motion for judgment non obstante veredicto and rendered judgment accordingly, from which appellant perfected his appeal to the Court of Civil Appeals of the Fifth Supreme Judicial District at Dallas and the same was transferred to this court by order of the Supreme Court.

The record reveals that in March of 1940 appellee by mutual agreement employed appellant to represent it as an insurance salesman in and around Dallas at a salary of $150 per month, together with other allowances agreed upon, but either party reserved the right to terminate the contract of employment at will. In June of 1940 appellant terminated the contract of employment and settled with appellant apparently in full and satisfactorily up to June 30, 1940. But for some reason appellee's home office did not discontinue appellant's monthly payments and for nineteen consecutive months thereafter appellant continued to receive a monthly salary check of $150 from appellee, the total sum of which finally amounted to $2850. Although appellant knew his services had been terminated and that he was no longer earning any salary from appellee, he had need for such and he therefore endorsed the checks, cashed them and used the money for the benefit of himself and his family. Early in 1942 appellee discovered that such payments were being erroneously made to appellant and such were discontinued. Sometime thereafter appellee's agents sought a recovery of the said overpayments amounting to $2850 from appellee and discussed with him his civil liability for the same and the criminal aspects of such conduct on his part. Appellant was disturbed about the matter since he was not then financially able to reimburse appellee for the overpayments he had received and used and he was likewise afraid of a criminal prosecution. He approached his cousin, who was an attorney practicing before the Dallas bar, and told him about the matter. His said cousin told him that he would go see what could be done about it. Soon thereafter his said cousin discussed the matter with appellee's attorneys and negotiated a settlement of the differences between appellant and appellee that grew out of the said overpayments. Later the said cousin called appellant and told him he had a note for appellant to sign. Appellant went to the office of his said cousin, who told appellant it would be best for him to sign the note, and there he signed the note of date January 28, 1944, payable to appellee in the sum of $2500 to be paid in monthly installments of $25 each beginning February 1, 1944, and payable on the first day of each succeeding month until the note was finally paid, without interest except for such as may become due and payable on past due payments of the principal. Nobody was present when appellant signed the said note but himself and his said cousin. Appellee's attorney by letter of date February 1, 1944, addressed to appellant's said cousin, accepted delivery of the note from the said cousin together with the first payment made thereon and promised in the said letter that in view of the satisfactory settlement reached, any criminal action in the matter would be waived by appellee.

Appellant made his monthly payments consistently for 37 months, or for a period of more than three years, before default-

ing on April 1, 1947. The said note contained an acceleration clause and appellee declared the balance due on the note and filed suit on the same on October 23, 1947.

Appellant predicates his appeal principally upon two grounds, namely, a lack of consideration for executing the note and that the same was executed under duress and therefore void. Appellant seems to take the position that any services rendered to him or in his behalf by his cousin, who was a practicing attorney at the Dallas bar, were not binding since such services were not rendered under a contract of employment and no fee was paid the said attorney by appellant. It is our opinion that the relation of attorney and client does not depend upon the payment of a fee. Such may exist as a result of rendering services gratuitously. A contract of employment may exist merely as a result of an offer or request made by the client and an acceptance or assent thereto by the attorney. The contract of employment may be implied by the conduct of the two parties. 6 C.J. 630–31, Sections 124 and 125; 7 C.J.S., Attorney and Client, § 65; 5 Am.Jur. 279, Section 31. It is therefore our opinion that the relationship of attorney and client existed between appellant and his cousin who was a practicing attorney at the Dallas bar. But, be that as it may, such a question is not necessarily significant in this case. Appellant ratified the acts of his said cousin when he signed the note in question which his cousin had procured as a result of his negotiations with appellee's attorney for settlement of their differences and the record reveals that appellant signed such note with full knowledge of all the material facts and circumstances connected therewith.

Appellant also takes the position that the money paid to him by appellee "was a voluntary payment" made by appellee and he was not therefore liable for its return. The record does not justify such a position. "Voluntary" means done by design or intentionally or purposely or by choice or of one's own accord or by the free exercise of the will. A voluntary act proceeds from one's own free will or is done by choice or of one's own accord, unconstrained by external interference, force or influence. Derden v. State, 56 Tex.Cr.R. 396, 120 S.W. 485, 133 Am.St.Rep. 986; Thompson v. State, 24 Tex.App. 383, 6 S.W. 296; 44 Words and Phrases, Perm. Ed. page 380; The New Century Dictionary; and Webster's Dictionary. For some reason appellee's home office failed to discontinue sending the checks to appellant after his services had been terminated and appellee pleaded that the checks sent to appellant after the effective date of a settlement with him were sent because of some accident or mistake on the part of appellee's home office. The evidence reveals conclusively that such checks were sent to appellant as a result of accident, mistake, lack of proper information or through the negligence of appellee. The checks were not sent deliberately, intentionally or purposely or by choice with full knowledge of the existing conditions. At any rate, when appellant received the said checks, they were worthless until some affirmative action was taken on his part. He endorsed them and presented them for payment before receiving any money. He admittedly did so with knowledge that he had not earned the money evidenced by the face of each check. When appellant endorsed and cashed the checks he knew he was wrongfully obtaining money from appellee. He testified that the note in question was supposed to have been given in repayment for the money he had received from the checks in question. In the case of Theuber v. Marek, Tex.Civ.App., 222 S.W. 293, the court held that money wrongfully obtained from another is a valuable consideration for a promissory note taken for repayment of it. The court further held that the payor would be liable on such a note so executed even if and when such a note had been executed under duress.

The record reveals conclusively that appellant wrongfully obtained and appropriated money that belonged to appellee and that appellee charged him of so doing. In a similar case of Largent v. Beard, Tex.Civ. App., 53 S.W. 90, 92, the court held that a threat to prosecute a person which threat induced him to sign a note constituted duress. But the court further held that "Although duress may have existed, yet if, as

a matter of fact, defendant had appropriated property belonging to plaintiff, and executed the note in settlement therefor, though induced so to do by the threat of prosecution, he would be liable thereon to the extent of the value of the property so taken." Such a rule is recognized by the court in the case of Thompson v. Hicks, Tex.Civ.App., 100 S.W. 357, and by 6 Tex. Jur. 866. It is our opinion that the foregoing authorities directly support appellee's contention in this case to the effect that there was a valid consideration for the execution of the note and that such was a valid obligation although duress existed.

There is evidence strongly supporting the theory that appellant signed the note in question because he honestly and conscientiously thought such to be right and proper. It can reasonably be assumed from the evidence that his cousin advised him to do so for the same reason. But, assuming that the note in question "was induced and procured by threats of criminal prosecution" as found by the jury and for no other reason, such will not always void the contract. Under the record and the authorities cited (and we have found no authorities to the contrary) it is our opinion that the note in question was executed for a valuable consideration and that the note was given by appellant for money wrongfully obtained by him from appellee, and he is liable therefor even if the note was procured as a result of duress.

■ At any rate, the record reveals that the checks in question were sent to appellant by appellee as a result of appellee's negligence and by reason of some sort of mistake of fact. No other conclusion can be reached from appellant's own testimony. In connection with such a mistake of fact, 32 Tex. Jur. 735-37 lays down a general rule, citing numerous authorities in support thereof, as follows to wit:

"It is a general rule that money paid under a mistake of fact—that is, an unconscious ignorance or forgetfulness of a fact —may be recovered * * * The reason for the rule is that the payee ought not to be permitted to retain that which in conscience does not belong to him as against the person to whom in conscience it does belong.

"The mere fact that the mistake was due to negligence on the part of the person who made the payment will not preclude recovery; and the payor may recover though he had the means of knowing the facts at the time, where he did not have actual knowledge of them * * * Such negligence does not give the payee the right to retain what was not his due, unless he was misled or prejudiced by the mistake."

In this instance appellant was not misled or prejudiced in any manner by appellee's mistake. On the contrary, he was materially benefited since the checks reached him at a time when he had no employment and was in need of financial assistance.

The record reveals that for some reason appellant received from appellee checks for a period of nineteen consecutive months totalling $2850 after his services for appellee had been terminated; that appellant indorsed and cashed the checks and used the proceeds therefrom with full knowledge that he had not earned such money; that in settlement of its claim against appellant appellee accepted a non-interest bearing note for $350 less than the total amount of the said checks appellant received; that appellant paid consistently on the said note for a period of more than three years, until a claim of liability upon the original sum was barred by the statute of limitations, before he defaulted in his payments. Then he seeks to void the contract of payment he had recognized and consistently observed by making 37 consecutive monthly payments thereon. It is our opinion that such a manner of acquiring property and then seeking to escape liability therefor does not constitute "fair dealing" and may be "unconscionable" as that term is defined by 42 Tex. Jur. 650, Section 46. Such a position is supported by the case of Snyder v. Citizens State Bank, Tex.Civ. App., 184 S.W.2d 684, in which case the court holds that a person who acquires the title to property in an "unconscientious manner" should not be entitled to retain such under the rules of equity.

For the reasons heretofore stated, it is our opinion that the trial court properly rendered judgment for appellee notwithstanding the jury verdict. All of appellant's points to the contrary are overruled and the judgment of the trial court is affirmed.