## MRS. C. H. CURL v. THE STATE.

### No. 1389.  Decided February 28, 1912.

**1.—Slandering Female—Indictment—Innuendo.**

Where, upon trial of slandering a female, the indictment followed approved precedent, and it was necessary to use therein innuendos to explain the meaning of the language used, and the same was not duplicitous, or vague and indefinite, there was no error in overruling a motion to quash.  Following Woods v. State, 58 Texas Crim. Rep., 103, and other cases.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of slandering a female, the evidence sustained the conviction, there was no error.

**3.—Same—Charge of Court—Misdemeanor—Requested Charges.**

Where, upon appeal from a conviction of slandering a female, the questions attempted to be raised by the requested charges and the refusal thereof, and the bills of exception thereto were wholly insufficient to be considered, there was no reversible error.

**4.—Same—Evidence—Other Transactions—Limiting Testimony—Intent.**

Where, upon trial of slandering a female, other slanderous words uttered at a different time and place were introduced in evidence to show intent, and the court limited the same to the intent of the defendant in using the alleged slanderous words, there was no error; besides, defendant admitted such testimony.

**5.—Same—Absence of Defendant—Practice—Waiver.**

Where, upon trial of slandering a female, it appeared from the record on appeal that defendant's attorney had notified State's counsel that defendant did .not intend to be present when the court's charge was read to the jury, and did not raise the question that defendant was absent during the reading of a part of the court's charge at the time the rest of it was read in the presence of defendant and her counsel, there was no reversible error.  Following Killman v. State, 53 Texas Crim. Rep., 575, and other cases.

**6.—Same—Verdict.**

Where, upon trial of slandering a female, the verdict of the jury found the defendant guilty according to the law and the evidence of the case, etc., the same was sufficient.

'Appeal from the County Court of Lamb. Tried below before the Hon. H. R. Miller.

Appeal from a conviction of slandering a female; penalty, a fine of $100. ·

The opinion states the case.

W. B. Lewis, for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of verdict: Steinburger v. State, 35 Texas Crim. Rep., 492.

PRENDERGAST, Judge.—On October 4, 1910, the grand jury of Lamb County, indicted appellant for slander, charging that on August 30, 1910, she "did orally, falsely and maliciously and wantonly, impute to a female in this State, to wit, Mrs. J. L. Prenty, a want of chastity, to wit, the said Mrs. C. H. Curl did then and there, in the presence and hearing of Mrs. W. C. Winters, and divers other persons, falsely, maliciously and wantonly say of and concerning the said Mrs. J. L. Prenty that the said Mrs. J. L. Prenty was not a good woman, and that the said Mrs. J. L. Prenty showed herself in front of the drug store before men, meaning thereby and intending to convey the impression, upon the minds of the said Mrs. W. C. Winters and said divers other persons that she, the said Mrs. J. L. Prenty had, in front of the drug store, and before men, demeaned herself in a lewd and lascivious manner. That the said Mrs. C. H. Curl then and there, in the presence and hearing of the said Mrs. W. C. Winters and of divers other persons further falsely, maliciously and wantonly said that Forrest Moore, Lowell French and Guy French were the three young men that were paying attentions to her, the said Mrs. J. L. Prenty, meaning thereby, and intending to imply and to convey to the mind of the said Mrs. W. C. Winters, and said divers other persons, that she, the said Mrs. J. L. Prenty, had heretofore had carnal intercourse and received into her embraces the said Forrest Moore, Lowell French and Guy French. That the said Mrs. C. H. Curl did then and there further say in the presence and hearing of the said Mrs. W. C. Winters and said divers other persons that the said Mrs. J. L. Prenty had on one occasion gone to a tackey party at the home of one Mrs. Clark and that Forrest Moore stayed at the telephone office, which telephone office was in the same building occupied by the said Mrs. J. L. Prenty as her sleeping apartments, and that the said Mrs. Prenty did not return to her home (her said home then and there being in the same building with said telephone office) from the said party till two o'clock in the morning, and that said Forrest Moore did not get home until morning. Meaning thereby and intending to imply and convey the impression to the mind of the said Mrs. W. C. Winters and of said divers other persons that upon the return of the said Mrs. Prenty from said party to her home at two o'clock in the morning she permitted

the said Forrest Moore to remain with her in her home until morning, and while there that they had carnal intercourse each with the other." She was tried on May 1, 1911, convicted, and fined $100.

Appellant made a motion to quash the indictment on the following grounds, claiming: (1) It does not charge an offense in plain and intelligible words. (2) It shows on its face that the words alleged to have been used by the defendant are not slanderous per se, that is, if she used the words alleged, she would be guilty of no offense. (3) It is duplicitous and charges more than one offense in the same count. (4) It is duplicitous in that it charges one conversation as made in the presence and hearing of Mrs. W. C. Winters and divers other persons and it charges another conversation with Mrs. Winters and divers other persons, but does not state that the said divers other persons were the same parties as charged in the first case, and further it does not allege that each of said alleged conversations were made at the same time and before the same parties. (5) "In reference to a certain allegation the defendant is charged with having 'said' which shows that the conversation was in the past and not in the present, and does not state that it was within two years, and prior to the filing of said indictment." (6) Because of the flagrant and prejudicial innuendos set out therein which innuendos are highly prejudicial and the language alleged to have been used in said indictment could not have been construed to mean the things alleged in said innuendos. (7) It is vague and indefinite as to the time alleged as it shows to have been written in 1900 instead of 1910, the said naught having a one mark through the same, but it is vague, indefinite and ambiguous and defendant does not know what date was intended to have been meant by said indictment.

As to the 7th ground there is nothing shown by the record to bear it out and it is, therefore, not well taken.

The indictment follows substantially the forms laid down by Judge Willson and also by Judge White and is sufficient. Penal Code, article 1180 (new); Patterson v. State, 12 Texas Crim. App., 458; Humbard v. State, 21 Texas Crim. App., 200; Shaw v. State, 28 Texas Crim. App., 236; Dickson v. State, 34 Texas Crim. Rep., 1; Crane v. State, 30 Texas Crim. App., 464.

The words charged to have been uttered by appellant were susceptible of the meaning alleged by the innuendos (Kyle v. State, 55 Texas Crim. Rep., 361), and as the meaning of the language used, without the innuendos, was not obvious, it was proper to allege its meaning by the innuendos. Berry v. State, 27 Texas Crim. App., 483; Rogers v. State, 30 Texas Crim. App., 462; Neely v. State, 32 Texas Crim. Rep., 370; McKie v. State, 37 Texas Crim. Rep., 544. Taking the whole allegations in the indictment they are not duplicitous in the sense claimed by appellant; they charge all of the language used as being at the same time and to Mrs. Winters and substantially to the same

divers other persons. Appellant could have in no way been misled or injured by the whole allegations. Code Criminal Procedure, articles 460 and 476 (new); Woods v. State, 58 Texas Crim. Rep., 103, 124 S. W. Rep., 918. Of course, the indictment is not bad, because the innuendos charge what was meant by the language used, as it was necessary to do this. The court did not err in overruling the motion to quash.

The State proved by Mrs. W. C. Winters fully and substantially all of the allegations charged in the indictment, and that appellant uttered to her at the same time in the same conversation on or about the date charged in the indictment, all the language as charged in the indictment.

In fact, appellant herself testified in substance that she, in a conversation with Mrs. Winters, told her therein, and used concerning Mrs. Prenty, all the language charged in said indictment. Her claim was that she was merely repeating what others had told her and that she had no intention to slander Mrs. Prenty in repeating this language. It was shown by her testimony, on cross-examination by the State, and in substance in her testimony in chief, that previous to the time she used said language to Mrs. Winters about Mrs. Prenty that she had been closely associated with Mrs. Prenty in church work and social affairs and that while she had not only talked to Mrs. Winters about Mrs. Prenty, as charged in the indictment, that she had also substantially so talked to three other ladies in the town where this occurred but had never mentioned it to Mrs. Prenty.

The State had ample evidence to sustain the conviction on each and all of the several charges in the indictment.

The court gave an apt and correct charge to the jury submitting all of the several questions to them for their finding.

The appellant requested several special charges to the jury all of which were refused by the court. The appellant took one bill of exceptions to the refusal of the court to give these charges in the following language: "Be it remembered that upon the trial of the above styled and numbered cause the defendant offered to the court special charges numbers one, two, three, four, five, six, seven, eight and nine, and asked that the same be allowed and read to the jury but the court refused the same, to which action of the court the defendant then and there, in open court, excepted, and here now tenders this her bill of exceptions and asks that the same be allowed, signed and filed as a part of the records of the case, which is accordingly done." This is the whole of the bill of exceptions, except the style and number of the cause and the court wherein pending and the signature of the county judge. In the motion for new trial the refusal of the court to give these several charges is complained of in very general language to the effect that the court erred in refusing the defendant's special charge No. ——, giving the number thereof, and merely mentioning the subject matter thereof. For instance, as to charge one, after the above lan-

guage, this follows: "Which is a peremptory instruction of the defendant, instructing them to find a verdict for said defendant." To the second, this: "To the effect that the innuendos set out in the indictment forms no part of the same." And such like general expressions. In some other of the special charges requested and refused the evidence nowhere calls for or would authorize such a charge. Besides this, such special charges so requested and complaint thereof so made in the motion for new trial, even in a felony case, would be wholly insufficient to require this court to consider them. Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878, and cases therein cited. In a misdemeanor case, as this was, the questions attempted to be raised by the request and refusal of said charges and the bills of exceptions thereto, are wholly insufficient to require this court to consider them; but we have considered them and hold that the court did not commit reversible error in refusing any or all of them.

By two bills it is shown that the appellant objected, in one, to the testimony of Mrs. Dotson, which was to the effect that shortly prior to the time that appellant is charged in the indictment with having uttered the slanderous words to Mrs. Winters in a conversation with her, Mrs. Dotson, the appellant had used to her substantially the same language concerning the conduct of Mrs. Prenty with the three young men mentioned in the indictment that she is charged to have used to Mrs. Winters. In the other bill complaint is likewise made of the testimony of Mrs. Clark of what appellant had said to her about Mrs. Prenty which had a tendency to reflect upon the virtue of Mrs. Prenty. The objection to this testimony, in effect, was that it was not uttered in the presence of hearing of Mrs. Winters and was at a different time and place from that charged in the indictment. The court, in his charge, limited this testimony correctly to showing the intent of the appellant in using the slanderous words about Mrs. Prenty to Mrs. Winters. All of the authorities hold that such testimony is admissible for the purpose of showing the intent the party had at the time of uttering the slanderous words. Collins v. State, 39 Texas Crim. Rep., 30; West v. State, 44 Texas Crim. Rep., 417; Manning v. State, 37 Texas Crim. Rep., 180; Stayton v. State, 46 Texas Crim. Rep., 205. There was no error in admitting this testimony as qualified by the charge of the court. Besides, appellant, in her testimony, voluntarily testified what she had said to Mrs. Dotson and Mrs. Clark, the same as they testified.

The only other complaint necessary to be noticed is, appellant complains that the court committed reversible error in reading the first part of his charge to the jury in the absence of the appellant. The record on this subject shows this state of facts: The evidence was closed about 6 o'clock on the day the case was tried. The jury was then turned over to the sheriff to be kept in charge until the reconvening of the court at about 7:30 p. m. or not later than 8:00 that

night. Thereupon the county judge and the attorneys for both sides went to the county judge's room for the purpose of preparing the charge of the court which was done. It took some time to do this. It was then and there, however, prepared and read over and the appellant's attorneys knew what it was. About the time they had concluded the preparation of the charge, the appellant's husband, who was also an attorney, went to where they were at her request, and stated to the county judge and her own and the State's attorney that she was not feeling well and would not return to court after supper to hear the charge unless she had to. The attorney for the State then replied to appellant's husband that it was entirely with her husband and appellant whether she returned or not. The county judge and attorneys then went to supper and returned to the courthouse about 8:00 o'clock. The jury, the county judge and a large crowd assembled in the courtroom, it taking some little time for this to be done, and quiet to be had. The judge then, believing all the parties were present, had the clerk to file the charge and began reading it to the jury. Just after reading the first page, which in effect only stated to the jury the charge contained in the indictment against the appellant and her plea of not guilty, it was discovered that a word in the charge had been omitted and both the State's attorney and appellant's suggested that the word be inserted which was done. The appellant's attorney came into the courtroom with the appellant. At no time until the filing of the motion for new trial was the attention of the court called to the fact that the appellant and her attorney had not been in the courtroom all the time while the first part of the charge was being read. The room was poorly lighted and full of people and the appellant and her attorney were in front of the courthouse door when the court and the crowd went upstairs at which time the court assembled and the charge was read. Nothing else whatever was done in the case during the absence, if absent, of the appellant other than has been stated above. The appellant's counsel had heard the charge read in the county judge's office before going to supper and knew all the charge contained, and, as stated by the court in his qualification of the bill, "if defendant was not present it was because of her voluntary act."

We have carefully gone over the entire matter. No injury whatever is shown to have occurred to the appellant even if a part of the charge was read before she came into the courtroom. No complaint whatever was then made by either her or her attorney that any part of the charge had been read during her absence. Without doubt, if she had then made known the fact that she was not present when the first part of the charge was read, the court would have then reread it. Besides, if she was absent she was voluntarily absent and through her husband, who was an attorney, she had prior thereto notified the court, her attorney and the State's attorney that she did not intend to be present when the charge was read to which the State's attorney and all parties apparently then consented. There was no error whatever shown by this

proceeding that would justify this court to reverse this case. Cain v. State, 15 Texas Crim. App., 41; Killman v. State, 53 Texas Crim. Rep., 570.

The verdict, as follows: "We, the jury, find the defendant, Mrs. C. H. Curl, guilty according to the law and evidence of the case and affix the fine to the lowest limit which is $100," is clearly sufficient.

The judgment will be affirmed.

*Affirmed.*