**LEE v. STATE.**
No. 22026.

Court of Criminal Appeals of Texas.
April 1, 1942.

Rehearing Denied April 29, 1942.

M. D. Emerson, of Paris, for appellant.

Spurgeon E. Bell, State's Atty., of Austin, for the State.

GRAVES, Judge.

Appellant, a negro, was charged with the murder of Johnson Henderson, another negro, and by the jury given a penalty of twenty-five years in the penitentiary.

The State's theory was that the killing was actuated by a robbery motive; that appellant struck the deceased with an iron bar on the head, and left the body on the railroad track near to the town of Petty, in Lamar County, and that a railroad train ran over the body, dismembering it, and scattering pieces of flesh and clothing for quite a distance on the track.

Appellant's defense being a denial, and an offered alibi, as well as an effort to fasten the crime upon some one else. There was admitted in evidence an oral statement made to a deputy sheriff, whereby there was discovered an instrument with which it was contended the offense was committed, it being an iron bar; and also a written confession signed by appellant in which his guilt was admitted, as well as the testimony of an accomplice, a woman, who claimed to have been present when appellant struck the deceased with the iron bar and left the body on the railroad track.

Relative to the confessions, appellant offers as a reason for the making of same the fact that he was so frightened that he did not know what he was saying, and the further persuasions of the sheriff, and his fear of mistreatment at the hands of the officers, and incidentally the fact that he was kept for many days confined in a dungeon-like place in the Lamar County court house called a holdover, a cell like structure where but little light filtered in, and where no one else was confined.

The record is replete with objections and 28 bills of exceptions, some of which we do not think demand a lengthy consideration.

Bill of exceptions No. 7 relates to the finding of a money sack among the pieces of the deceased's body, the members thereof and portions of the clothing identified as that of deceased, such money sack first being found in the box in which the scattered remains of the deceased had been placed, some distance from the point and some time after the body of deceased had been discovered on the railroad track. It was shown by the evidence that prior to the death of Henderson he had quite a sum of money in a money sack, and while a witness was looking for this money sack among the gathered remains of the deceased, such was found and positively identified as the sack worn by the deceased and in which he kept money, the sack being empty and bearing evidence of having been run over by some heavy object such as a railroad car. We think the same was admissible on two grounds, one being an aid in determining the identity of the dead body, and again as being of some assistance in furnishing a motive for the crime. This ruling also disposes of bill No. 8, as well as bill No. 9, the court qualifying the latter bill by the statement that no blood was present on such sack, and we therefore hold that the introduction of such could not have influenced the minds of the jury. To the same effect is bill No. 13, which is also overruled.

Bill No. 10 objects to the introduction of an oral statement to the deputy sheriff in which he was informed relative to the iron bar by the appellant, with which appellant told him he had struck the deceased. This we think was admissible under Art. 727, C.C.P. This conversation was testified to by appellant while upon the witness stand, and he also testified to the trip out to his house where the iron bar was recovered, but appellant claimed that such was done because the deputy sheriff said he would beat him to death if he did not go out there and find such bar. This matter was submitted by the court in his charge to the jury, and we see no error reflected herein. Bill No. 11 also relates to the admission of such oral confession, and our ruling is the same as to bill No. 10.

292

■ Bill No. 16 relates to certain testimony going to show the presence of one "Bud" Lee with the deceased on the day of the night that deceased met his death, at which time the deceased had some money in his hand, and deceased and the said "Bud" Lee left together going towards the railroad. It seemed that the witness then said: "That man sitting over there is the one that went with Johnson Henderson from the depot down east," evidently indicating, in the presence of the jury, the person about whom he was talking. If such was appellant, then we see no error shown; if such was not appellant, then no injury could have resulted. We overrule such bill.

■ Bill No. 19 is based upon the following: One Lucile Thomas was also indicted for this same offense. She filed a motion for a severance, and asked that appellant be first tried, which motion the trial court granted. It is not shown by the record what action, if any, that appellant took in such matter. Upon this trial she took the stand and testified to damaging facts against the appellant. Appellant alleged in his objections to her testifying that he agreed to the granting of the motion for a severance because such witness had agreed not to testify against him and that she would not be a witness for the State; however we find nothing relative thereto in the record other than such as is found in the bill as above stated. We do not think any error is shown in allowing such witness to testify. The State is neither alleged to have been nor shown to have been a party to any agreement of any kind relative to this motion for severance; it is neither alleged nor proven that the State agreed to or even knew of any such agreement between the two indicted persons, and if the witness desired to take the stand and turn State's evidence, such was surely a matter for her own conscience to determine. She said her reason was: "Well, the Lord got the truth out of me * * * I had to tell the truth, the truth will come out."

■ Bill No. 20 complains because the witness Lucile Thomas, the co-indictee of appellant, was used in the State's rebuttal testimony rather than in the direct portion of the State's case. We think the allowance of her testimony in rebuttal was a matter for the court's discretion, and no error is shown.

■ The remaining bills are mainly concerned with the complaint that the State had failed to establish the corpus delicti in that the deceased came to his death by violence inflicted by another. The testimony shows from the admitted accomplice that Johnson Henderson was on the railroad track sometime in the night of the charged crime; that she and appellant had planned to rob him; that appellant came up to where the couple was and struck Henderson over the head with an iron bar, and that Henderson "fell down on the track and grunted." That they then robbed Henderson and left him on the track. Appellant's oral confession as well as his written confession stated practically the same thing. It is evident that a railroad train ran over the body of deceased and cut it practically all to pieces, part of the face being cut off, the hands cut off, and the legs dismembered, and the intestines scattered up and down the track. That he was alive on the day of his death was shown by different witnesses, and inferentially at least it was shown that his body had been dead some hours before being run over by such train because of the absence of any quantity of blood on such track, as well as the same absence of blood on pieces of human flesh found on said track, as well as the absence of any blood on any part of the train.

■ We think the corpus delicti can be established by the testimony of an accomplice, corroborated by the confession of the defendant, and we find such here present. We quote from Kugadt v. State, 38 Tex.Cr.R. 681, 44 S.W. 989, 996:

"In other words, in the establishment of the corpus delicti, the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. See note 3 to case of State v. Williams, reported in 78 Am.Dec., p. 254. And this rule is recognized in this state. See Jackson v. State, 29 Tex.App. 458, 16 S.W. 247. Said case quotes with approval an excerpt taken from 4 Am. & Eng. Enc. Law, p. 309, as follows: 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a reasonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the cir-

cumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused.' "

 Bill No. 12, offered by appellant, was qualified by the trial court, which qualification was excepted to by appellant. The trial court then prepared and filed his own bill No. 1. Appellant then presented a bystanders' bill, which bill embodied appellant's proffered bill No. 12, without the trial court's qualification thereto. The State did not see fit to file a controverting bystanders' bill, and we are therefore relegated to a consideration of appellant's bystanders' bill No. 1, which is the same as the proffered but refused appellant's bill No. 12.

In 4 Tex.Jur., p. 288, § 202, it is said: "The appellate court is bound by a bystanders' bill which complies with the statute and is not contested by controverting affidavits filed in the court below, as authorized by the statute. It may not be contested nor its correctness questioned by affidavits or letters filed in the appellate court; and where an appellant files both a bill as qualified by the court and a bystanders' bill which conflicts with the matter stated in the qualification, the appellate court must consider the bystanders' bill."

Had the State controverted such bill a different question might have arisen, but as the record is presented, we must take the bystanders' bill as the record in such matter.

Such bill No. 12, bystanders' bill No. 1, is based upon the following notation in the statement of facts: "The defendant was absent from the court room during the time that the argument was made by counsel for defendant and counsel for the state, on the motion for peremptory instructions of a verdict of not guilty. The court gave the defendant permission to go upstairs and the counsel for defendant was present in the court room at the time and made no objection."

 It appears from such bill that after the State had rested its case, an argument was made by the appellant's attorney requesting the court for a peremptory instruction to the jury to find appellant not guilty; that the defendant was at such time absent from the court room during such argument. That when the defendant was given permission to retire from the court room, his attorney was present therein and made no objection thereto. The said bill then states that the court knew that the defendant was not in the court room at such time, but permitted such arguments to be made by both the counsel for the defendant and the State. On account of the failure of the State to file a controverting bystanders' bill, we take the above to be the facts.

Under the statute it is provided by Art. 580, C.C.P. that: "In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor where the punishment or any part thereof is imprisonment in jail * * *."

Under the bill that we are here considering we think the absence of appellant from the court room during the argument relative to the motion for a peremptory instruction was error, and one for which this cause must be reversed. As authority therefor we cite the case of Brooks v. State, 77 Tex.Cr.R. 517, 179 S.W. 447. In that case Brooks was locked up in jail while his attorney was arguing a motion for a peremptory instruction, although he was again brought into court when the State began its argument. This court held such to be error for which the case was reversed. Also, see Patterson v. State, Tex.Cr.App., 60 S.W. 557, 560.

All other bills not herein mentioned have been considered and are overruled.

For the error shown in bystanders' bill No. 1, this judgment is reversed and the cause remanded.

## On State's Motion for Rehearing.

HAWKINS, Presiding Judge.

The State presents a motion for rehearing insisting that under the recitals in the bystanders' bill the absence of appellant during the argument on the motion for a peremptory instruction should be regarded as a "voluntary" absenting of himself on the part of appellant.

Article 582, C.C.P. reads in part as follows: "Where the accused is on bail when the trial commences, such bail shall not thereby be considered as discharged until the jury shall return into court a verdict of guilty or not guilty. He shall have the same right to have and remain on bail during the trial of his case and up to the return into court of such verdict as under the law he has before the trial commences; but

immediately upon the return into court of a verdict of guilty, he shall be placed in the custody of the sheriff, and his bail considered discharged. * * *"

██ If appellant had been on bail and walked out of the court room during the trial it would have fallen under a voluntary absence as held in Ballou v. State, 113 Tex.Cr.R. 493, 22 S.W.2d 666, and the cases therein cited. See, also, Whitehead v. State, 66 Tex.Cr.R. 482, 147 S.W. 583. The recitals in the bill negative the idea that appellant was on bail. They show that he was under the control of the sheriff who would not take appellant out of the court room without getting the consent of the trial judge. The absence or presence of appellant was not within his control.

The State's motion for rehearing is overruled.