

# In the Court of Criminal Appeals of Texas

---

No. PD-0486-23

---

ELIJAH TATES, *Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Thirteenth Court of Appeals
Brazos County

---

YEARY, J., filed a concurring opinion in which SCHENCK, P.J., and PARKER, J., joined.

We granted the State's petition for discretionary review in this case to resolve essentially one question: Did the court of appeals err to rely on this Court's opinion in *Lira v. State*, 666 S.W.3d 498 (Tex. Crim. App. 2023), to hold that the statutory requirement that a defendant be

"personally present at [his] trial" is not a forfeitable right under the rubric of *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993)? *Tates v. State*, 692 S.W.3d 628, 633−35 (Tex. App.—Corpus Christi 2023); TEX. CODE CRIM. PROC. art. 33.03. The Court seems to agree with the State that *Lira* does not logically support that proposition. *See* Majority Opinion at 18−20. I will therefore say no more about that question here. I join the Court's opinion with the following observations.

The State argues that this Court settled the question of whether Article 33.03 creates a forfeitable right several decades back, in *Routier v. State*, 112 S.W.3d 554, 575 (Tex. Crim. App. 2003). There, in a capital murder direct appeal, we peremptorily dispatched an argument that the trial court erred to conduct an in-chambers discussion of a jury note in the defendant's absence by observing that "[s]he failed to object at the earliest opportunity" and thereby "failed to preserve error." *Id.* (citing TEX. R. APP. P. 33.1).[1] We did so uncritically, without any discussion of where the statutory requirement of a defendant's "personal presence at the trial" should fall on the *Marin* spectrum of error-preservation analysis.[2]

---

[1] Having concluded that Routier forfeited her Code of Criminal Procedure Article 33.03 claim, the Court nevertheless proceeded to declare both that no error occurred and that any error was harmless. *Routier*, 112 S.W.3d at 575−79.

[2] In relevant part, Article 33.03 reads:

> In all prosecutions for felonies, the defendant must be personally present at the trial, . . .; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

In *Marin*, the Court made clear that Rule 33.1 of the Rules of Appellate Procedure was designed to apply only to the types of claims that are forfeitable, and not to those that are of the "fundamental" or "waiver-only" variety.[3] Today, though, Judge Keel characterizes *Marin*'s "efforts to distinguish" forfeitable rights from non-forfeitable rights as "circular or opaque." Dissenting Opinion at 2. But *Marin* did not purport to undertake the more daunting project of defining exactly how to locate particular rights/requirements within its categorization scheme. It simply described the error-preservation consequences that follow from a categorization. Deciding which category a particular right/requirement falls under must be undertaken on a right/requirement-by-right/requirement basis. *See, e.g.*, *Gutierrez v. State*, 380 S.W.3d 167, 177 (Tex. Crim. App. 2012) ("[A] condition of community supervision that effectively operates to deport a probationer violates an absolute prohibition and is therefore not subject to ordinary principles of waiver or procedural default.").

When the right/requirement that is invoked is of statutory origin, determining the appropriate *Marin* category is essentially a question of statutory construction. *See Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017) (construing TEX. CODE CRIM. PROC. art. 38.05, prohibiting a

---

TEX. CODE CRIM. PROC. art. 33.03.

[3] *Marin* actually dealt with Rule 33.1's predecessor, Rule 52(a) of the former Texas Rules of Appellate Procedure. "Since its adoption in 1986," the Court said, "we have regularly applied [Rule 52(a)] only in cases of forfeitable trial rights and never to a violation of fundamental systemic requirements or to the infringement of rights so important that their implementation is mandatory absent an express waiver." *Marin*, 851 S.W.2d at 280.

trial court judge from commenting on the weight of the evidence or offering "his opinion of the case"); *Mendez v. State*, 138 S.W.3d 334 (Tex. Crim. App. 2004) (describing the statutory scheme governing guilty pleas, as construed by the Court over the years, in determining whether the right to withdraw a guilty plea is forfeitable). "The starting point for determining statutory meaning is to examine both the literal text of the statute and its context; and part of the statutory context includes the history of the statute in question." *Ex parte Moon*, 667 S.W.3d 796, 803 (Tex. Crim. App. 2023).

In my opinion, both the language of Article 33.03 itself, as well as this Court's treatment of it since its inception in the 1856 "Old Code" [hereinafter, "O.C."], support the proposition that the statutory right/requirement to "be personally present at the trial" falls squarely within the "waiver-only" category, and that it is decidedly not subject to mere forfeiture.

## I. ERROR PRESERVATION: STATUTORY HISTORY OF ARTICLE 33.03

### A. Article 540 of the 1856 "Old Code"

As originally enacted in 1856, Article 540 of the "Old Code" provided, almost identically to the first sentence of present Article 33.03, that "in all prosecutions for felonies, the defendant must be personally present on the trial." O.C. art. 540. Although not directly citing the statute, the Texas Supreme Court remarked in 1873 that "[t]he accused should not only be within the walls of the court house, but he should be present where the trial is conducted, that he may see and be seen, hear and be heard, under such regulations as the law has established." *Brown*

*v. State*, 38 Tex. 482, 485 (1873).[4] And, on its face, the statutory language does not suggest the kind of right that an accused must insist upon or else he loses it.[5]

The earliest case I can find that explicitly addresses Article 540 is *Gibson v. State*, 3 Tex. App. 437 (1878). There, the appellant complained on appeal that he had been excluded from the hearing on his motion for new trial, "absent in jail, and without a waiver of his presence in court." *Id.* at 438. On the strength of Article 540, in combination with Article 682 of the "Old Code," which required "the presence of the defendant" for the entry of judgment and pronouncement of sentence after a motion for new trial proceeding, the Texas Court of Appeals reversed the conviction.[6] *Id.* at 442.

---

[4] The Texas Supreme Court had criminal appellate jurisdiction until it was removed in the 1876 Texas Constitution. That same constitution also created the Texas Court of Appeals—the predecessor court to this Court—and endowed it with criminal appellate jurisdiction. *Watson v. State*, 204 S.W.3d 404, 429 (Tex. Crim. App. 2006) (Cochran, J., dissenting). This Court, in turn, at least under its current name, was created in amendments to the Texas Constitution adopted in 1891, which granted it "exclusive appellate jurisdiction over criminal cases." *Id.* at 430 (Cochran, J., dissenting).

[5] *Marin* defines a forfeiture to be "the loss of a claim or right for failure to insist upon it by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to the system's impartial representative, usually the trial judge." 851 S.W.2d at 279. "Waivable rights, on the other hand, do not vanish so easily." *Id.* at 280. An accused "need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver by him." *Id.* A waiver-only right cannot be "forfeitable by a party's inaction." *Proenza*, 541 S.W.3d at 797 (quoting *Mendez*, 138 S.W.3d at 342).

[6] Section (1)(a) of current Article 42.03, which began its life as O.C. art. 682, still provides that "sentence shall be pronounced in the defendant's presence[,]" except as provided in Article 42.14 of the current Code. TEX. CODE

Without explicitly saying whether Gibson had raised this issue in the trial court, the Court of Appeals there did remark: "The objection that the accused was not present when any proceeding was had in his case should always be made in the lower court, in order that that court might have an opportunity to correct the error." *Id*. at 441. The Court did not say whether such an objection was necessary to preserve error for appeal before concluding, however, that "when the record shows affirmatively, as in this case, that [the defendant] was not present [for a new trial hearing], the judgment will be reversed and the case remanded for a new trial." *Id*. at 442.

In that same year, the Court of Appeals also cited to *Gibson* for the proposition that the accused is "entitled to be present" at a motion for new trial hearing. *Sweat v. State*, 4 Tex. App. 617, 620 (1878). The Court noted in *Sweat v. State*, however, that in *Gibson*, "the attention of the [trial] court was directed to" the fact of the defendant's absence (presumably by his counsel), so that the record affirmatively showed he had not been present.[7] *Id*. at 619. By contrast, the *Sweat* Court observed:

> In the present case it is not shown anywhere that the attention of the court below was ever called to the fact; nor is it made to appear, except inferentially, that the accused was not, in fact, present in court when the motion for a new

---

CRIM. PROC. art. 42.03(1)(a). Article 42.14(b) provides for the pronouncement of sentence in the defendant's absence under very narrow and specific circumstances not relevant to this case. TEX. CODE CRIM. PROC. art. 42.14(b). As the court of appeals noted, "[n]either party advocates for the applicability of Article 42.14(b); therefore, our analysis concerns only Article 33.03." *Tates*, 692 S.W.3d at 636−37 n.7.

[7] I find nothing in the Court's opinion in *Gibson* to indicate this. Perhaps the Court was taking judicial notice from its memory of the case?

trial was determined.

*Id.* at 619−20. The Court next remarked that, by statute, any right may be "waived,"[8] and noted that, when the accused's absence has not been expressly shown in the record, a "presumption" of waiver "might" be "indulge[d]." *Id.* at 620. The Court concluded:

> [T]o entitle [the accused] to a reversal of a judgment of conviction, it must be made to appear from the record, affirmatively, that he desired to exercise the right of being present, and that this was denied him, in the court which tried the case. It is but reasonable that, if the court should be about to commit an error of this character, through inadvertence or otherwise, his attention should be called to it, and an opportunity afforded him to not only give the accused all his rights under the law of his case, but also to place himself right upon the record.

*Id.* at 621−22.

It is arguable, therefore, that the Court in *Sweat* treated what *Marin* would regard as a forfeiture—the loss of a right by inaction—as sufficient to establish a "waiver" under our general waiver statute.[9] If

---

[8] The general waiver provision was in Article 26 of the "Old Code," and has been carried over, with revisions over the years, into Article 1.14(a) of the current Code of Criminal Procedure. O.C. 26; TEX. CODE CRIM. PROC. art. 1.14(a).

[9] Six years later, construing a statute from the Utah Territory that, like 540 of the Old Code, required the "personal presence" of the defendant at trial, the United States Supreme Court observed that, not only was the requirement not subject to forfeiture, but that "[w]e are of opinion that it was not within the power of the accused or his counsel to dispense with statutory requirement as to his personal presence at trial." *Hopt v. People of the Territory of Utah*, 110 U.S. 574, 579 (1884). This language would suggest a *Marin* category *one* construction of the statute—an absolute requirement that is "to be observed even without partisan request." 851 S.W.2d at 280. So far as I have found,

so, the Court would soon change course.[10]

## B. Article 596 of the 1879 Code

Article 596 of the 1879 Code of Criminal Procedure made no substantive changes to the statute; only a few minor revisions of punctuation. It continued to provide that, in felony cases, "the defendant must be personally present on the trial[.]" The most pertinent authority with respect to the question of forfeiture versus waiver under that Article may be found in this Court's opinion in *Bell v. State*, 32 Tex. Crim. 436, 24 S.W. 418 (1893).

In *Bell*, the accused had not been brought into court from jail during the direct-examination testimony of a State's witness. *Id.* at 419, 24 S.W. at 439−40. This Court declared that "[t]he question of waiver by defendant is not in this case, and a discussion is pretermitted." *Id.* at 419, 24 S.W. at 440. Perhaps this was the Court's way of articulating that the accused had made some kind of objection to the proceedings occurring in his absence, once again potentially confusing forfeiture for "waiver"—but it is unclear.

What is clear, however, is that, before reversing Bell's murder

---

however, this Court has never gone so far in construing any of Article 33.03's predecessor statutes. Nor has the Supreme Court ultimately adhered to that view. *United States v. Gagnon*, 470 U.S. 522, 529 (1985).

[10] Two other cases under the Old Code affirmed convictions where the accused had been absent at a motion for new trial hearing, but the trial court remedied the situation by recalling its ruling and conducting a new hearing in his presence. *Krautz v. State*, 4 Tex. App. 534 (1878); *Berkley v. State*, 4 Tex. App. 122 (1878). Neither case speaks to the question of whether the claim was waivable versus forfeitable, having resolved the issue based upon the trial court's curative action upon noticing the problem at the trial court level.

conviction, the Court went on to discuss the nature of an accused's rights under both the general terms of Article 596, as well as under certain other Code provisions that mandated his presence at specific stages of trial.[11] *Id.* This is how the Court described the nature of those rights: The accused "cannot be deprived of [them] without his consent, had in a proper way, and the courts should see to it that these provisions of law are not violated during trials had before them." *Id.* This sounds a lot like how *Marin* described an accused's waiver-only right, namely, that "the judge has an independent duty to implement [it] absent an effective waiver by him." 851 S.W.2d at 280; *see also Mendez*, 138 S.W.3d at 342 ("A law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only.").[12]

One opinion of special note, decided under the 1879 Code, was

---

[11] Besides Article 596 of the 1879 Code, the Court in *Bell* also cited Articles 695 through 698, which together provided that "the defendant shall be present in court" for communications between the jury and the trial court after jurors have retired to deliberate, and Article 711, requiring that "the defendant must be present when the verdict is read[.]" Neither of these provisions was actually implicated on the facts of *Bell*, however, since the accused was absent during the State's presentation of evidence in *Bell*.

[12] Other cases decided under Article 596 of the 1879 Code, but not passing on the question of waiver versus forfeiture, include: *Granger v. State*, 11 Tex. App. 454 (1882) (appellant was not present at the time the trial court altered its jury charge, but he later complained about it in a motion for new trial: reversed and remanded); *Mapes v. State*, 13 Tex. App. 85 (1882) (appellant was not present when the trial court acted upon a *nunc pro tunc* judgment, being in jail, but his attorney demanded his presence; his absence rendered the judgment void, depriving the Court of Appeals of appellate jurisdiction); *Powers v. State*, 23 Tex. App. 42 (1887) (appellant's absence during the voir dire of a particular venireman, "called to the attention of the [trial] court," was technically error, but the State's use of a peremptory challenge made any such error "manifestly harmless").

*Shipp v. State*, 11 Tex. App. 46 (1881). It was authored by the same Court of Appeals judge (Winkler) who had written the opinion in *Sweat* three years before, but it did not address Article 596. Instead, *Shipp* was concerned with Articles 695 through 698 of the 1879 Code, which specifically provided that "the defendant shall be present in court" whenever the trial court dealt with juror communications with the court after the jury has retired to deliberate. Shipp had been absent when the trial court gave the jury additional instructions, and for that error, the judgment was reversed. *Id.* at 50–51.

As to the statutory requirement that the accused be present for this particular stage of trial, the Court of Appeals in *Shipp* observed that "the subject of a waiver of his right to be present" was never mentioned during the proceedings, but that it did not ultimately matter:

> We are of opinion further that the defendant's counsel, though present, was not obliged to see that the defendant was present, and that it could not be inferred from his silence that the defendant had waived his right to be present when the proceeding in question was being had against him. It was the duty of the court and the prosecuting attorney to see to it that the rights guarantied to him by law when his liberty was involved were guarantied to him on the trial, and that he is present in court when by law he is entitled to be present. The defendant's counsel could not waive for him the right to be present in court when a charge was being given to the jury; and hence the presence and silence of his counsel cannot be construed into a waiver by the defendant of his legal right to be personally present in court on so important an occasion. If it had been sought to bind the defendant by a waiver, the record should have shown in plain and unmistakable language that the defendant in person and in open court, his attention being specifically directed thereto by the court or under its direction, formally waived

his right to be present in court.

*Id.* at 50. Once again, this language seems to point to the kind of obligation upon the trial court that *Marin* would regard as the hallmark of a waiver-only right. And it is important because this Court would later rely on the Court of Appeals' opinion in *Shipp* as authority when construing a later predecessor to Article 33.03, as we shall see.

### C. Article 633 of the 1895 Code and the Act of 1907

Article 633 made no substantive change from Article 596. But twelve years after the 1895 Code came into effect, in 1907, the Legislature enacted a new statute which parroted the "personal presence on the trial" language of Article 633, but for the first time also introduced the concept of a defendant's voluntary absence as a justification for completing a trial notwithstanding that absence. Acts 1907, 30th Leg., ch. 19, § 1, p. 31, eff. Mar. 15, 1907. This 1907 provision would eventually be codified as Art. 899 of the 1911 Code of Criminal Procedure, and it would co-exist with Article 633 of the 1895 Code, which later became Article 646 of the 1911 Code, until the two provisions were essentially combined as Article 580 of the 1925 Code.[13] In the absence

---

[13] Besides introducing the voluntary absence proviso, the 1907 enactment also included the presumption that if the accused were present at the outset of a trial, he would be deemed present throughout, absent a contrary showing in the record. This presumption was later carried over into Article 580 of the 1925 Code, and again into Article 33.03 of the 1965 Code. But curiously, the voluntary absence proviso was not carried over into the 1925 Code. It was later reinstated in Article 33.03 of the 1965 Code, as then-Judge Onion observed in his Special Commentary, to "incorporate[] the existing case law into the statute[.]" *See Miller v. State*, 692 S.W.2d 88, 91−92 (Tex. Crim. App. 1985) (quoting Judge Onion's Special Commentary to Article 33.03 and citing cases).

of any indication that the accused *had* voluntarily absented himself from trial, this Court's decisions under Article 633 of the 1895 Code, and the independent 1907 enactment, continued to treat the statutory right to be present during trial as waivable—*not* forfeitable.

In *Hill v. State*, 54 Tex. Crim. 646, 14 S.W. 117 (1908), the jury during its deliberations asked to have certain testimony reproduced, which the trial court permitted though the accused was not recalled to the courtroom, being out on bond.[14] His counsel did not simply fail to object—he purported to *waive* Hills' appearance for him. *Id.* at 649, 14 S.W. at 118. But this Court refused to honor counsel's waiver, remarking that "the statute [referring to the 1907 enactment, later codified as Article 899, and eventually combined with Article 633 of the 1925 Code, the immediate predecessor to Article 33.03] explicitly says the defendant must be personally present, and . . . the action of the [trial] court is in the face of the statute." *Id.* at 649−50, 14 S.W. at 118−19. The Court apparently believed that an accused's "personal presence" could only be abandoned by his "personal" waiver. Hill's murder conviction was reversed.

The appellant in *Derden v. State*, 56 Tex. Crim. 396, 400, 120 S.W. 485, 486 (1909), was absent when the jury's verdict was returned, but was "making his way from his boarding house to the court." The trial court declared that it was permissible to return the verdict in Derden's

---

[14] The Court explained that Hill "was on bond at the time and was voluntarily absent[.]" *Id.* at 649, 14 S.W. at 118. But he was apparently not informed of the jury's request, and he cannot have been thought to have known to be back in the courtroom at the time. Nor did the Court purport to apply the new statutory authority to continue the trial in Hill's absence on account of his "voluntary" absence.

absence and refused to wait. *Id.* at 399, 120 S.W. at 486. His counsel neither purported to waive his client's statutory right to be present, "nor did he at that time make any objection to the action of the court" in accepting the verdict in his client's absence. *Id.* at 400, 120 S.W. at 486. Invoking Article 633, the 1907 enactment, as well as Article 749 of the 1895 Code, which specifically required the presence of the accused when the verdict is returned,[15] and on authority of its earlier holding in *Hill*, the Court reversed this murder conviction as well, notwithstanding trial counsel's failure to object to Derden's absence. *Id.* at 400−03, 407, 120 S.W. at 487−88, 491.[16]

---

[15] Article 749 of the 1895 Code has survived largely intact and is incorporated in present Article 37.06 of the 1965 Code. It currently reads, in relevant part: "In felony cases the defendant must be present when the verdict is read unless his absence is wilful or voluntary." TEX. CODE CRIM. PROC. art. 37.06. Article 749 of the 1895 Code read: "In cases of felony the defendant must be present when the verdict is read, unless he escape after the commencement of the trial of the cause."

[16] Other cases decided under Article 633 of the 1895 Code and/or the 1907 enactment were disposed of without reference to whether the error must be preserved by objection—several on the basis that the defendant had voluntarily absented himself. *See, e.g.*, *Gonzales v. State*, 38 Tex. Crim. 62, 41 S.W. 605 (1897) (though the defendant was not present for the passing upon his motion for new trial, there was no error when the trial court set aside its ruling and offered the defendant the chance to re-urge it, which the defendant declined); *O'Toole v. State*, 40 Tex. Crim. 578, 51 S.W. 244 (1899) (the defendant was temporarily absent when the jury was empaneled, but there was no error when he declined the trial court's offer to conduct the same proceedings over again when he returned); *Cason v. State*, 52 Tex. Crim. 220, 106 S.W. 337 (1907) (no error where the defendant's temporary absence was remedied when the trial court instructed the jury to disregard evidence presented in his absence and the State reproduced the evidence in the defendant's presence); *Killman v. State*, 53 Tex. Crim. 570, 112 S.W. 92 (1908) (when the defendant voluntarily absented himself during a portion of his counsel's argument, "[w]ithout discussing the question of waiver, or how far that might affect the appellant's contention here," the Court refused to reverse

### D. Articles 646 and 899 of the 1911 Code

Article 646 of the 1911 Code continued to provide that, "[i]n all prosecutions for felonies, the defendant must be personally present on the trial[.]" In *Brooks v. State*, the accused was absent from the courtroom, and "locked up in jail[,]" while his attorney was arguing that the trial court should grant an instructed verdict. 77 Tex. Crim. 517, 518, 179 S.W. 447 (1915). On the strength of Article 646,[17] a majority reversed the conviction—even in the face of a dissenting opinion that complained that Brooks' counsel had made no contemporaneous objection. *Id.* at 519, 179 S.W. at 447−48. Thus, while there was no discussion of *waiver* in the Court's brief opinion, there was an implicit rejection of any application of *forfeiture*, if only perhaps because Brooks had at least complained of the matter in a motion for new trial. *Id.* at 518, 179 S.W. at 447.

In *Crow v. State*, 89 Tex. Crim. 149, 230 S.W. 148 (1921), the defendant was kept in jail during the jury-selection portion of his trial for murder. When the attorneys for both sides agreed to excuse a previously selected juror, the trial court suggested that it might be

---

the conviction). In *Foreman v. State*, 60 Tex. Crim. 576, 132 S.W. 937 (1910), evidence was inadvertently presented in the defendant's absence, to which he complained in a motion for new trial. This Court reversed the conviction under Article 633, holding that the new trial should have been granted, without any discussion of waiver or forfeiture. *Id.* at 578, 132 S.W. at 938.

[17] Brooks was on trial for a misdemeanor offense, but Article 646's presence requirement applied equally (as did its predecessors all the way back to the Old Code) to misdemeanors where incarceration is a potential punishment. *See Id.* at 519, 179 S.W. at 447 (quoting Article 646 in total, including the phrase: ". . . and he must likewise be present in all cases of indictment or information for misdemeanors where the punishment or any part thereof is imprisonment in jail").

appropriate to "have the defendant brought back to court" to dispose of the matter. *Id.* at 152, 230 S.W. at 149. Crow's counsel assured the trial court that this would not be necessary "as the question would never be raised," presumably meaning on appeal. *Id.* But it *was* raised on appeal, and after quoting the relevant text of Article 646, this Court excerpted a lengthy portion of the Court of Appeals' opinion in *Shipp* (much of which is quoted above), for the proposition that Crow's counsel was not empowered to waive his right to be present for him. *Id.* at 155, 230 S.W. at 151. The right not having been validly waived, the Court reversed the conviction. *Id.* at 160, 230 S.W. at 154.

Of similar import that same year, in *Sullivan v. State*, 90 Tex. Crim. 170, 174, 233 S.W. 986, 988 (1921) (op. on reh'g), the Court once again, in an opinion on rehearing, cited approvingly to *Shipp*, among other authorities, for the proposition that in cases involving the right of the accused to be present in court during trial, such right "cannot be waived by the attorneys for the accused." *Sullivan* involved both Articles 646 and 899. Ultimately, the waiver question did not make a difference in Sullivan's case, since he had voluntarily absented himself, and when he returned, the same evidence was reintroduced in his presence, so that no error actually occurred. *Id.* at 172, 233 S.W. at 987.[18] But it suggests

---

[18] Other cases decided under Articles 646 or 899 of the 1911 Code, but which shed little light on the question of waiver versus forfeiture, include: *Curl v. State*, 65 Tex. Crim. 431, 436, 145 S.W. 602, 606 (1912) (although the accused was absent when part of the trial court's charge was read to the jury, his absence was voluntary, and while the Court's opinion mentions that trial counsel did not object, it also points out that Curl had notified the trial court that she would not be present "and all parties apparently then consented"— which sounds like a waiver); *Whitehead v. State*, 66 Tex. Crim. 482, 147 S.W. 583 (1912) (the accused missed part of his counsel's opening statement to the

to me that, if counsel cannot even affirmatively *waive* his client's right to be "personally present on the trial" under those provisions, surely it cannot be said that counsel could *forfeit* his client's right by *inaction*.

## E. Article 580 of the 1925 Code

The first sentence of Article 580 of the 1925 Code remained substantively the same as all of its predecessors, with the exception that, like former Article 899, it said "at" the trial instead of (as in former Article 646) "on" the trial. For the first time, it also took from former Article 899 the presumption that when the accused is present at the "commencement" of trial, it is presumed he was present throughout, absent a contrary showing in the record. *See* note 13, *ante.* Article 899 itself was recodified as Article 692 of the 1925 Code, and it carried forward Article 899's requirement that the accused be present when the verdict is read unless his absence at that time is "wilful [sic] or voluntary[.]"[19] No such language was included, however, in Article 580.

*Schafer v. State*, 118 Tex. Crim. 500, 40 S.W.2d 147 (1931), like

---

jury, but his absence was voluntary); *Fry v. State*, 78 Tex. Crim. 435, 439−40, 182 S.W. 331, 333−34 (1916) (the accused, having voluntarily absented himself during a trial court's "dynamite" charge to a deadlocked jury, would not be heard to complain, especially in light of Article 899's new authorization for trial courts to proceed under such circumstances); *Cartwright v. State*, 97 Tex. Crim. 230, 259 S.W. 1085 (1924) (when the prosecutor displayed an item of physical evidence to the jury in the courtroom in the absence of the accused and his attorney, any error under Article 646 was deemed harmless).

[19] *See Hadley v. State*, 163 Tex. Crim. 571, 294 S.W.2d 717 (1956) (applying the "wilful or voluntary" provision of Article 692 of the 1925 Code to affirm the conviction when the accused was absent when the jury's verdict was read); *Reed v. State*, 172 Tex. Crim. 122, 353 S.W.2d 850 (1962) (treating "wilful or voluntary" absence under Article 692 "as a waiver" of the statutory right to be present).

*Shipp* before it, involved the defendant's absence during jury communications with the court, so Article 580 was not cited. Instead, the Court relied upon the 1925 Code provisions expressly requiring the presence of the accused during such communications, especially then-Article 679, to reverse a murder conviction. *Id.* at 502, 505, 40 S.W.2d at 149, 150. In the course of reversing, however, the Court quoted extensively from *Crow*, which in turn had quoted *Shipp* (as quoted above), before concluding:

> In the present case there was a failure on the part of the [trial] court to follow the mandatory provisions of the statute. Appellant did not waive the right to be present in court when the trial judge communicated with the jury. His counsel could not waive such right for him.

*Id.* at 502–03, 505, 40 S.W.2d at 149, 150.

Not surprisingly, then, over the next twenty-five years, this Court would twice reiterate *Crow*'s waiver requirement in cases in which Article 580 was invoked. First, in *Lee v. State*, 144 Tex. Crim. 135, 161 S.W.2d 290 (1942), a murder case, the trial court permitted the defendant to leave the courtroom during his lawyer's argument for an instructed verdict. Counsel made no objection. *Id.* at 141, 161 S.W.2d at 293. On original submission, and on authority of *Brooks*, discussed above, this Court reversed the conviction. *Id.* Then, on rehearing, while recognizing earlier "voluntary absence" cases, including one decided under Article 580's predecessors,[20] the Court noted that Lee had not

---

[20] *See Ballou v. State*, 113 Tex. Crim. 493, 494, 22 S.W.2d 666, 667 (1929) (applying voluntary absence under Article 679 of the 1925 Code, even though that provision contains no such language on its face; but, notably, treating it as a species of "waiver"); *Whitehead*, 66 Tex. Crim. at 486–88, 147

been at large on bail, and that his "absence or presence . . . was not within his control." *Id.* at 142−43, 161 S.W.2d at 294. Accordingly, it overruled the motion for rehearing. *Id.*

Second, in a fairly perfunctory opinion in *Phillips v. State*, 163 Tex. Crim. 13, 288 S.W.2d 775 (1956), the Court reversed an assault with intent to rape conviction, on authority of Article 580, concluding that "the appellant was not present when his motion for new trial was overruled, that he was in jail, and that he did not *waive* his right to be present at the proceedings." *Id.* (emphasis added).[21] By this time, the requirement of a waiver was so well entrenched that the "able State's Attorney" confessed error, though no mention is made of whether there was an objection to preserve error (or whether there *had to be* an objection to preserve error). *Id.*[22]

---

S.W.2d at 585−86 (applying voluntary absence where the accused excused himself to go to "the closet" during his counsel's argument to the jury; no statute is mentioned, but either Article 646 or Article 899 of the 1911 Code must have been the basis for the claim on appeal, since no statute specifically requires the presence of the accused during the arguments of counsel). In *Whitehead*, this Court recognized the brand-new opinion of the United States Supreme Court in *Diaz v. United States*, 223 U.S. 442, at 455 (1912), in which that Court recognized that voluntary absence "operates as a waiver of [the accused's statutory] right to be present[.]"

[21] The Court had likewise granted relief under Article 580 without any mention of waiver versus forfeiture in another perfunctory opinion in *Henderson v. State*, 137 Tex. Crim. 18, 127 S.W.2d 902 (1939). *Henderson* involved a misdemeanor theft conviction for which jail time was an option, so Article 580 applied. The trial court "heard, considered and overruled" the motion in the absence of the accused. Under these circumstances, with little discussion, the Court reversed the conviction under Article 580.

[22] One possible outlier is the Court's opinion in *Ex parte Cassas*, 112 Tex. Crim. 100, 13 S.W.2d 869 (1929). There, the accused became intoxicated during trial—admittedly by "his own voluntary act"— and remained out of the

## F. Article 33.03 of the 1965 Code

The first clause of the first sentence of Article 33.03 is identical to that of Article 580 of the 1925 Code: "In all prosecutions for felonies, the defendant must be personally present at the trial[.]" Acts 1965, 59th Leg., Vol. 2, ch. 722, § 1, p. 317, eff. Jan. 1, 1966. Article 33.03 also added the "voluntary absence" proviso, which had formerly been embodied in Article 899 of the 1911 Code, namely: "provided that in all cases, when the defendant voluntarily absents himself after pleading guilty to the

---

courtroom while his counsel argued the case. *Id.* at 102, 13 S.W.2d at 870. He made no issue of his absence on direct appeal, but he raised it for the first time in a post-conviction application for writ of habeas corpus filed in the trial court, which denied relief. *Id.* On appeal to this Court, denial of relief was affirmed. *Id.* Cassas argued that his absence had rendered the conviction "void." *Id.* at 103, 13 S.W.2d at 870. This Court pulled out all the stops to hold otherwise, notwithstanding earlier cases that might have supported Cassas's claim. On rehearing, the Court declared that earlier discussions of Article 580 and its predecessors in direct appeal cases had overstepped to suggest that a violation of the accused's right to be "personally present" during his trial would render his conviction "void"—"the word 'voidable' should have been used[.]" *Id.* at 106−07, 13 S.W.2d at 872 (op. on reh'g). Along the way the Court pointed out, not only the fact that Cassas essentially waived his right by virtue of his voluntary intoxication, but also the fact that he had failed to object, as the pre-*Shipp* opinions in *Sweat* and *Gibson* may have required him to do to preserve error. *Id.* Such questions were ultimately deemed to be "aside from the question before us," however, which was whether a conviction that is merely "voidable" may be collaterally attacked. *Id.* at 107, 13 S.W.2d at 872 (op. on reh'g). The Court held that it may not. *Id.* *Cassas* was decided during an era in which only void convictions were assailable in post-conviction collateral attacks. *Ex parte Crispin*, 777 S.W.2d 103, 106 (Tex. Crim. App. 1989) (Clinton, J., concurring). Nowadays, of course, we would simply declare that "[p]urely statutory violations are not cognizable in [post-conviction] habeas corpus." *Ex parte Stepherson*, 693 S.W.3d 364, 384 (Tex. Crim. App. 2024). In any event, the fleeting allusion to forfeiture in *Cassas*, besides being anachronistic, was arguably *obiter dictum*, and contrary to every case on the subject since *Shipp*.

indictment or information, the trial may proceed to its conclusion." *Id*.[23] Notwithstanding the addition of the proviso, however, the Court has described voluntary absence as a species of "waiver," not forfeiture. *See, e.g.*, *Gonzales v. State*, 515 S.W.2d 920, 921 (Tex. Crim. App. 1974) (holding that, by voluntarily absenting himself from trial after entering his not guilty plea once the jury was selected, "[t]he appellant waived his right to be personally present at the trial").[24] If even "voluntary absence" operates as a waiver, how much so must a waiver be required when an accused is deprived of his right to be personally present not through his own conduct, but simply because some part of "the trial" was conducted in his *involuntary* absence?

When the Legislature recodified the personal-presence-at-trial requirement in Article 33.03 in 1965, it was undoubtedly aware that this Court had almost uniformly construed its predecessors to create a waiver-only right. Aware of how this Court had construed the first

---

[23] In 1979, Article 33.03 was amended to add the phrase "or after the jury has been selected when trial is before a jury," to identify the beginning point at which the defendant's voluntary absence will trigger the proviso in a jury trial. *See Miller*, 692 S.W.2d at 91−93 (describing the significance of the amendment to Article 33.03 in Acts 1979, 66th Leg., ch. 745, § 1, p. 1832, eff. Aug. 27, 1979). The 1979 amendment, as described in *Miller*, has no bearing on the waiver-versus-forfeiture issue before us in this case.

[24] Another case since 1965 that invoked the new voluntary absence clause of Article 33.03 was *Johnston v. State*, 477 S.W.2d 891 (Tex. Crim. App. 1972). There, the Court observed that "[c]ounsel for appellant made no objection to the continuation of the trial." *Id*. at 893 & n.1. Despite this allusion to the absence of an objection, the Court's ultimate ruling was that "[n]o error is shown." *Id*. at 893. The Court did *not* declare, as it would later do in *Routier*, that no error was *preserved*. The Court made no attempt in *Johnston* to explain the significance of counsel's failure to object, and undoubtedly ruled on the merits based on Johnston's voluntary absence, not forfeiture.

sentence of the statute to create a waiver-only right, the Legislature re-enacted it again and again, in Code after Code. In re-enacting it once again in the 1965 Code, the Legislature seems to have perpetuated the meaning as thus judicially determined from the statutory language. *See* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, at 322 (2012) ("If a word or phrase has been authoritatively interpreted by the highest court in a jurisdiction, . . . a later version of that act perpetuating the wording is presumed to carry forward that interpretation.").

Perhaps that explains how, only a year ago, the Court was able, once again, to confidently assert that the statutory right to be personally present at trial is subject to "waiver"—as opposed to "forfeiture"—citing our opinion under Article 580 of the 1925 Code in *Phillips*, discussed above. *Hughes v. State*, 691 S.W.3d 504, 518−19 & n.7 (Tex. Crim. App. 2024). The dissent today errs if it believes that the insertion of the "voluntary absence" proviso into Article 33.03 has changed what has always been regarded as a waiver-only right into a forfeitable one. Dissenting Opinion at 6. For these reasons, in addition to those the Court gives today, I agree that the court of appeals did not err to reach the merits of Appellant's complaint.

## II. WAIVER VERSUS FORFEITURE UNDER ARTICLE 33.03

The dissent today declares that the only aspect of Article 33.03 that even speaks to the question of waiver versus forfeiture is the voluntary absence proviso, and that (apparently) this proviso plainly identifies a forfeiture rather than a waiver. Dissenting Opinion at 6−7. Never mind that the Court in the past has always treated a voluntary

absence as a kind of implied waiver, *not* a forfeiture. *E.g.*, *Gonzalez*, 515 S.W.2d at 921; *Whitehead v. State*, 66 Tex. Crim. 482, 486−88, 147 S.W.2d 583, 585−86 (1912). In any event, the voluntary absence proviso does not speak at all to the situation in which the accused is available but is somehow prevented from attending the trial in person.

Even *if* voluntary absence were to operate as a forfeiture rather than a waiver, would a defendant who has *not* voluntarily absented himself still have to object to preserve error for appeal? The Court never said he would before the proviso was added to Article 33.03, even though it had recognized voluntary absence as an implied "waiver" long before 1965. *See Miller v. State*, 692 S.W.2d 88, 91 (Tex. Crim. App. 1985) (quoting then-Judge Onion's Special Commentary to Article 33.03, indicating that the added proviso "incorporates the existing case law into the statute"). On the contrary, the Court has made it clear—over the long history of the statute—that in any case in which voluntary absence is *not* involved, the right to be present at trial is a classic waiver-only right, not subject to forfeiture on appeal by a failure to object at trial.

Historically, the "voluntary absence" waiver was first codified in a bail provision, in the 1907 enactment that would later become Article 899 of the 1911 Code before it was eventually wholly subsumed into Article 33.03. Acts 1907, 30th Leg., ch. 19, § 1, p. 31, eff. Mar. 15, 1907. It was thought that a defendant should not be able to abuse the right to be at large on bail during trial by absconding, while also relying on his competing right to be personally present to paralyze the proceeding. *See Whitehead*, 66 Tex. Crim. at 486−88, 147 S.W. at 585−86 (quoting

extensively from *Diaz v. United States*, 223 U.S. 442, 454−58 (1912)). Nothing like that happened in this case.

Appellant was not free on bail during his punishment proceeding. Nothing in the record suggests his physical presence could not have been obtained by the trial court. He was not responsible for the Covid pandemic, and it was not his choice to appear remotely at the punishment hearing rather than in person. Absent a "voluntary absence" of the kind that the statutory scheme has historically contemplated, the cases have always construed Article 33.03 and its predecessors to require an affirmative waiver of the kind *Marin* described—that is, the accused must relinquish his right "plainly, freely, and intelligently, . . . and always on the record." *Marin*, 851 S.W.2d at 280. The cases have also been emphatic that a purported waiver by counsel simply will not do.[25] Because Appellant did nothing to waive his claim that his right to be personally present was violated, the Court today is correct to conclude that he has not forfeited it for appellate review.

### III. THE ISSUES OF ERROR AND HARM ARE NOT BEFORE US

The State's petition for discretionary review does not seem to

---

[25] *See Shipp*, 11 Tex. App. at 50 ("The defendant's counsel could not waive for him the right to be present in court[.]"); *Hill*, 54 Tex. Crim. at 649−50, 14 S.W. at 118−19 (reversing even though trial counsel had purported to waive Hill's right to be present); *Crow*, 89 Tex. Crim. at 152, 157, 230 S.W. at 149−50, 152 (reversing despite trial counsel's purported waiver, quoting *inter alia*, *Shipp*); *Sullivan*, 90 Tex. Crim. at 174, 233 S.W. at 988 (op. on reh'g) (citing *Shipp* for the proposition that "the presence of the accused . . . cannot be waived by the attorneys of the accused"); *Schafer*, 118 Tex. Crim. at 502, 505, 40 S.W.2d at 149, 150 (same).

argue that the court of appeals, having concluded that error was *preserved*, and thus having *reached* the merits, erred in concluding that the trial court committed reversible error. This Court also did not grant discretionary review of any other issue "on its own initiative[,]" as the rules would have permitted. TEX. R. APP. P. 66.1, 67.1. Therefore, neither the question of error nor the question of harm (or the applicability of a harmless error analysis) is presently before us, and the Court does well not to address them.

## IV. CONCLUSION

With these supplemental observations, I join the Court's opinion affirming the judgment of the court of appeals.

**FILED:**                                      July 2, 2025
**PUBLISH**